Case number 16-5265, Eva Maze et al. Appellants v. Internal Revenue Service et al. Mr. Clark for the appellants, Mr. Wiener for the appellees. Good morning, George Clark on behalf of appellants. The Anti-Injunction Act doesn't apply here because at the end of the day, the IRS will be able to assess and collect whatever tax my clients owe under the proper procedures set out at law. In fact, our suit is an attempt to get my clients in the proper procedure so that they can pay the same taxes that other similarly situated people pay. A little bit of background. So they can't collect the 20% accuracy related penalty, right? Well, they could. If my clients apply for the streamlined procedure and the government decides, you know what, we actually don't think you qualify for the streamlined procedure because you're willful, then the government can collect that penalty plus the 3520 penalties plus a fraud penalty plus the FBAR penalty in full at 50%. They can collect anything they want if they make that determination. Now, that's if you don't qualify for the streamlined procedure. Well, again, we apply – what this suit is about is about my clients being able to apply directly to the streamlined procedures and have the same rules that apply to those streamlined procedures apply to them. Once those same rules apply, the government looks at that filing and says, okay, do we think these people qualify? If they do that on a nondiscriminatory basis, not because we brought this suit, but they apply the same rules to everybody else and they decide, you know what, we actually don't think they qualify for streamlined. We think these people were willful. They can do whatever they want in that circumstance. The government concedes that. I mean, the rules themselves say that very clearly. The only circumstance in which they can't collect the accuracy-related penalty is if they actually look at the streamlined filing and say, you know what, these people do qualify. They qualify just like all these other people that had the same conduct, just like somebody that right now today – if somebody today came forward, they would have the benefit of that streamlined program. And that's all we're trying to do is to get the same benefit for our clients, for people that came in earlier than people that are today. There's no difference in that. So if you get what you want, they can't collect the accuracy-related penalty that they otherwise would collect? Not necessarily, Eric. What we want is the ability to apply to streamlined. But you don't want to be streamlined? We do want to be streamlined. But the government is going to get – I thought you were asking for an injunction to be put in the streamlined program. No, we're asking for an injunction to prevent the transition rule from blocking us from applying to streamlined. We want to just be able to apply like everybody else, and we want our application to be treated just like everybody else's, notwithstanding the fact that we had tried to do the right thing and disclosed earlier prior to there being another program. But if you win, there are taxes that you otherwise would have had to pay that you will not need to pay, right? The penalties, right? The remedy of this court won't be responsible for that, though, Your Honor. That's cutting it really fine. I mean, we're supposed to construe these arguments narrowly, right, because the broad purposes of the Anti-Injunction Act are to allow the IRS to collect first and then to quarrel later, right? So we're supposed to look with some skepticism on arguments that avoid that. And I'm afraid I don't see how your argument gets you there, because from my vantage point, you're in a situation right now where you're going to have to pay taxes that you wouldn't have to pay if you prevail. And that seems to me to be kind of in the wheelhouse of what the Anti-Injunction Act is talking about. Your Honor, I think if we think about what Z Street and Cohen both say, that we're supposed to look at the remedy that we're asking for. The remedy that we're asking for is set aside the transition rule and let these people apply directly to the streamlined program. Whatever happens, happens. But in each of those cases, the remedy the petitioners are seeking couldn't be obtained through a refund action. Yours can. It can't be, Your Honor. Why not? Because as you go to court, you argue the legality of the regulatory scheme. You prevail. You get your money back. That's what a refund suit is about. Your Honor, we're not going to be able to argue the legality of the offshore voluntary disclosure program. There's two outcomes that happen. If this court rules against us, there's two things that happen. One, we stay in voluntary disclosure and sign a closing agreement. Clearly, we can't argue against that later. The second is we get thrown out of the offshore voluntary disclosure program because they say, You know what? You guys didn't comply with the transition rule. Even though the transition rule was discriminatory, you guys didn't comply with it. The first argument the government is going to make in a refund suit as to that program issue is, well, they got kicked out. They didn't follow the program. If the program was a safe harbor, they don't have a right to rely on that. The only case they cite in support of that, Your Honor, is IBM. You got kicked out because if you prevailed in your refund suit that I'm imagining, you got kicked out because it was unlawful, right? The transition rules were unlawful for whatever reasons. It's not a voluntary choice of yours. You had no other option, right? Your Honor, the only case that they cite really for this is that IBM case. And IBM involved direct competitors, right, where one got a ruling from the government and the other one was trying to get the same ruling. And all the courts after IBM have restricted IBM to that same capacity, the same rule, that basically it only applies to direct competitors where one gets a ruling and one doesn't. That's the discrimination that we're alleging is a problem. So can you restate precisely what is the deficiency in the mechanism of the refund action? What are you worried about exactly? Them saying that we cannot raise the fact that the rule was discriminatory. The transition rule and the streamlined procedures were discriminatory against us, okay? Because we ourselves didn't comply with those rules. And it was a safe harbor. That rule is a safe harbor, right? You don't have to. It's voluntary. You don't have to apply to this. You can just go and have the regular code applied to you and everything else. You don't have to get the benefit of the streamlined procedures. If you want, you can just file back tax returns and see what happens. That's perfectly within your right to do. And the government's first argument is going to be, look, you guys had your chance. You should have followed through on the transition rule. You didn't follow through on the transition rule. You got kicked out. That's what the government's going to argue. Yeah, but if your argument is an objection to the streamlined procedures, let's suppose your argument is there's something wrong with the eligibility criteria for the streamlined procedures. They're arbitrary. And then if you go through a refund action and you challenge you're being disabled from getting the benefit of the streamlined procedure and therefore having to pay a higher tax on the ground that the criteria for the streamlined procedures are arbitrary, I thought what the government is saying is you can raise that kind of challenge in the refund action. Your Honor, I view this as the government in this court right now is saying that we can raise that. All of these taxpayers are going to be in different circuits than this circuit, and I have had many experiences with the Department of Justice lawyers, and, again, I'm not insulting anyone, where they take the position that's most beneficial to them wherever they're at. The fact that counsel said in a brief. Let's suppose. I know that you disagree with this, but let's just suppose it turns out that the view that I'm attributing to the government now is correct and that you could raise that kind of challenge in a refund action, i.e., a challenge to the eligibility criteria for the streamlined procedures. If that's true, then would you agree at that point that you have to wait and do it in the context of the refund action? We don't. That would be great news, Your Honor. We would appreciate that. Yeah. We do not think that that's an exception to the Anti-Injunction Act. Okay? We don't believe that the Anti-Injunction Act at all applies to this suit for the reasons that I gave initially, which is at the end of the day, the government can do whatever it wants here. If the government gets these applications, all we're asking for is we get to apply to streamline just like everybody else, and they can't discriminate against us because we brought the suit. The government looks at the filing. Maybe for one client they say, yeah, we think you guys need it. Another client they say, we don't think you need it. They can then apply the full plan more than the accuracy-related penalty. They can go after us for fraud. They can go after us for FBAR. They can go after us for 3520, everything, and the government admits that. So from our perspective, there is no block. There is no restraint. Direct marketing said stop. It does not stop assessment and collection. Does it hinder assessment and collection? Is it something the government doesn't want? Sure. But does it stop assessment and collection when they can actually do anything that they want once we're in that program as long as they don't do it on a discriminatory basis? We think no. All right. I'd like to reserve the rest of my time. All right. Thank you. Mr. Weiner. Thank you. Good morning, and may it please the Court. Andy Weiner for the United States Internal Revenue Service. This case involves a pre-enforcement challenge to an IRS policy that once you're in the OBDP, you are not entitled to apply directly to the streamlined procedures. When the streamlined procedures were enacted in 2014, the IRS anticipated that certain people would be interested in the streamlined procedures because they offer a different basket of benefits, some of which are better, some of which are worse, and that some people would want that. And what the IRS did was they provided an alternative for those people who were already in OBDP, which is the transition rule. I'm curious. What's the policy behind not allowing them to transfer to the streamlined procedures? Why this? You have a transition rule, but you can't really get to the streamlined procedures if you're already in the OBDP. Well, I think that there are two answers. One is that, again, there are different baskets of benefits, some of which are better, which is what the taxpayers here are focused on, some of which are worse. For example, you get a considerable degree of finality through the OBDP that you do not get with streamlined procedures. You get a closing agreement at the end. You also get, and this is a big-ticket item, you get CI clearance, criminal investigation clearance from the IRS at the time that you enter the OBDP. And that means that the IRS has determined that you're not currently under investigation and that your initial disclosures comply with the policy of the IRS that if you disclose and are cooperative, then the IRS will not make a criminal referral. I get where that is. Maybe it's not a legally relevant question, but I just don't quite understand why the policy was created such that if you're in the OBDP at the time that the SP comes along, why can't you just switch to it? Well, I mean, again, two reasons. One is that you've already accrued certain benefits that you got by entering, which is that CI disclosure. You've got this. But why not let the taxpayer decide that if they want to? Well, another factor I think is that, and this is in that, for example, in what's in the administrative record in that slide that's from the IRS, is that the IRS was going through a process by which it was trying to bring people voluntarily in the door in a balanced way. They wanted to hold people accountable, but they wanted to offer enough incentive that people would voluntarily come forward. And basically what you're doing is you're taking off, you're dredging off. The people who are at the highest risk, the people who have the most exposure, are going to come in the door first. And they largely did so when the program was initially enacted, I believe, in 2009 or 2010. Then there was a second OBDP in which another basket of people came in, and the IRS found through a bunch of sources, the private bar, through Taxpayer Advocate, that there were people who didn't feel like the terms were too harsh, and they were sitting on the sidelines. And the IRS wanted to bring them in. So these programs happened sequentially in order to capture different populations that were sitting on the sidelines. So now we're down to after the OBDP that these taxpayers came in on, you had a bunch of taxpayers who had very marginal exposure. They had small accounts. They might not have even known about them. And the IRS opened up a program that was just for them. The streamlined procedures are not meant for all non-willful filers. That's a misnomer. That's what taxpayers want to believe because they say, well, we're not willful, so we should be entitled to the benefit. But that's not right. Suppose that a taxpayer is trying to make this decision about whether to try for the streamlined procedures or go with OBDP. Is the taxpayer worse off if they have yet to make that choice than if they have already decided to seek the benefits of the OBDP by the time the streamlined procedures were announced? You understand my question? I'm trying to figure out whether if you have the choice activity and you could go into either one, are you better off than someone who didn't have that choice already because the streamlined procedures weren't yet in existence and so they already decided to go with the OBDP. And then the streamlined procedures are announced and they say, wait a minute, wait a minute, wait a minute, let me think this. If I had this to do all over again, knowing what I know now, I would have made a different choice. The reality is that the choice can't be exactly equal because if you make the choice after 2014 when the streamlined procedures have been enacted, you get to choose. You can go to the OBDP or you can go to streamlined procedures. And that reality can't be for somebody who's already in the OBDP. And that's where the transition roles really come into play. It tries to equalize the playing field as much as possible. It says, listen, you've already accrued certain benefits. You've already gotten the CI clearance. That's why the choice can't be made equal is because of the benefits you've already accrued? You've already accrued benefits. You've also, I mean, again, it's a different, the IRS at that point in 2014 is looking at a different population that they're trying to bring in the door than in 2012. And so they have to make judgment calls as to what's the proper balance between incentivizing people to come in the door but yet holding them accountable. And when you already have a bunch of people who have a tremendous amount of risk in terms of liability, in terms of criminal exposure, when you've already brought those people in the door, the balance shifts. And you've got to lessen the penalties. You've got to create more incentives for people to voluntarily disclose. And so that, I mean, that is another component. The idea, the transition rules say, listen, we'll give you the same penalty that the streamlined procedure people got, but we're not going to take it on faith that you're non-willful. You're going to have to demonstrate to us that you're non-willful. And so we're not going to bear the burden like we do in the streamlined procedures. We're also not going to give you the, we're not going to only hold you accountable for taxes for 3 years. You're going to have to pay for 8 years. We're not going to lessen the filing burdens. People in the streamlined procedures only file 3 years' worth of returns. OVDP people have to file 8 years' worth of returns. And so there is, there are, the scale has been slid back, and in some ways the IRS has said, listen, we understand these people have certain benefits that you don't get, and so we're going to meet you most of the way. Because you're a different population, and so, therefore, we need to, we need more returns. We need more. Can I ask you this question? So let's, just a simple argument purposes, I know you disagree with the premise, but a simple argument purposes that we think that the same standard that applies under the Tax Injunction Act also applies here, so that it requires something more than inhibiting interest and something akin to stopping. If that's true, the other side's argument, as we've seen in the recent, as we've heard this morning, is that, well, it's not a complete stop, because we don't know whether we, the taxpayer, are going to qualify for the streamlined procedures. So the IRS still has, actually, the opportunity to collect the same accuracy-related penalty. What's your response to that? Well, as I believe you pointed out earlier, their suit does stop the collection of 3 years' worth of accuracy-related penalties by virtue of entering. The streamlined procedures say no accuracy-related penalties for those 3 years that are relevant to the program. But what if their position is, we're not actually asking to be put in the streamlined procedures. What we're asking for is to be considered for the streamlined procedures. And if we're just asking to be considered for them, then we don't know yet that the IRS can't collect the accuracy-related penalty, because if they reject our application, they can collect it. Well, two answers to that, Your Honor. The first one is that it's still for the purpose of, their purpose is to not pay accuracy-related penalties. And so for the purpose of restraining, their suit is clearly for the purposes of not paying those accuracy-related penalties, as far as a whole bunch of other taxes. And then second, I would say that that argument would reduce the Anti-Injunction Act to effectively nothing. Bob Jones could have said, listen, we could get excluded from the tax, our tax exempt status could be taken away by a number of other reasons. We just want to be able to continue to discriminate in our admissions policies. And so therefore, we're not actually asking for a reduction in taxes. We're just asking for the ability to continue to discriminate. And the Supreme Court clearly said no, to the extent that you can, you have the ability to challenge your claim in a refund suit, which these taxpayers clearly do, they can withdraw from the OVDP, they can pay their taxes, and then they can challenge the bar on their entry into the streamlined procedures. And so therefore, this is, as I believe Judge Griffith said, within the wheelhouse of what the Anti-Injunction Act is. Can I ask one last question, which is on the South Carolina issue? So one could make the argument that you can't put them in the same position in a refund suit, because in order to get in the position of a refund suit even coming into the field of vision as a sequence of actions that could ensue, they have to give up the OVDP. And so what they'd like to do is get the benefit of staying in the OVDP, but still get a test on whether their injection to the threshold criteria to get in the streamlined procedures are valid or invalid. Right. No, they cannot stay within the OVDP. These are two separate programs. Right. So if they want to gain entry into the streamlined procedures, they have to withdraw from the OVDP. They've got to apply. They will get rejected, as they've been told. And then they can bring a suit in which they challenge that. So they're definitely, I mean, I think everybody agrees, they're definitely worse off if they seek to air this claim in a refund action than they would be if we allowed this suit to proceed. Yes, but, if I can provide a brief answer. But, clearly, Bob Jones has said, just because of the requirements that you have to go through in order to bring a refund action puts you in a precarious financial detriment to you. That is far short of what the South Carolina exception exists because you have no ability. Not that the ability would be, you know, would have repercussions. And what they're worried about is that right now you're saying they will have the ability to raise a claim about the criteria for the streamlined procedures in a refund action. And what they've said is that, well, that's fine and dandy to say it now, but then when we get in a refund action, we're worried that the government's going to come in and tell us we can't raise that kind of argument. Yes, but they can't enunciate a reason as to why. If they withdraw from the OVDP. So you don't foresee a situation in which the government would raise that kind of objection in a refund action? No, because, again, you know, okay. Again, it is the streamlined procedures themselves as well as the Q&A regarding the OVDP that says, listen, if you're already in the OVDP, you cannot enter the streamlined procedures. The transition rules is a benefit to them. And that's available if you're in the OVDP. If they withdraw from the program, yes, they can't get the transition treatment anymore, but they can still apply for streamlined procedures and challenge the bar on, the express bar on being able to enter because they were already part of the OVDP. And unless there are any further questions, we have to move on. All right, thank you. Does Mr. Clark have any time? Okay. Thank you. Some of my colleagues' comments with respect to the for the purpose of start to get close to a sort of subjective test, which is sort of, I think, the way the 10th Circuit might have looked at it in green solutions, but certainly not the way this court has looked at it. This is not a test of what the purpose, the subjective purpose of my clients were in bringing this suit. The question is, what does the order look like, right? What remedy do we get? And if that order says you can apply for streamlined, that order definitely does not stop the assessment or collection of tax, and that's the test. I think a good way to look at this is to flip it. Imagine we were in voluntary or we were in streamlined and we were trying to compel the government to take us into voluntary disclosure, where there's limited audit. You get a specific defined amount of your penalty that's way less than what the Tax Secrecy Act would otherwise allow, 50% FBAR versus 27.5% FBAR. We get a closing agreement. We get criminal protection. If we were arguing from streamlined to get into voluntary disclosure, there absolutely would be a restraint on assessment and collection. And I think that's illustrative. How can it be that there's a restraint when we're going one way and there's still a restraint on going the other way? It doesn't make any sense. If there's a restraint going from streamlined to voluntary disclosure, then going from voluntary disclosure to the much more open streamlined where the government can do in a nondiscriminatory fashion whatever it wants to do based on the law is not a restraint. The other point I would make with respect to the policy question that Judge Griffith had, the government, when they originally rolled out streamlined, they actually said people will be able to transition, and actually for people that hadn't completed certain steps in voluntary disclosure, people that hadn't done what they were supposed to do on a timely basis, they were able to transition without having these rules apply to them. One final point. One of my clients, Ms. Batra, she didn't even apply for voluntary disclosure. The government stuck her in voluntary disclosure. Why didn't they stick her in streamlined when streamlined came out? They stuck her in voluntary disclosure, and now we're stuck trying to figure out how to argue out and get her into voluntary disclosure. None of that's fair, and none of that should have an impact on the Anti-Injunction Act, unless there's further questions. I have nothing else. Thank you very much. Thank you.
judges: Henderson, Griffith, Srinivasan